[No. 27255. Department Two. December 8, 1938.]

GEORGE H. JACKSON, as *State Supervisor of Banking, Respondent,* v. JEWETT W. GARDNER *et al., Appellants.*[1]

[1] Reported in 84 P. (2d) 992.

*E. L. Casey,* for appellants.

*Robertson & Smith* and *Hart Snyder,* for respondent.

GERAGHTY, J.—In April, 1932, Clinton Court, Inc., owner of the Clinton Court apartments in Walla Walla, entered into a written agreement, denominated a lease, with J. W. Gardner and wife, under the terms of which the Gardners were to manage and operate the apartment house for the owner. The agreement was to be effective as of May 1, 1932, and to continue from month to month thereafter, subject to the right of the owner to terminate it upon thirty days' notice. It provided, also, that, upon sale of the apartment house, the Gardners should have thirty days' notice to vacate. The owner was to furnish all necessary repairs and materials used in the upkeep of the building, and the Gardners were to do all the work required in the operation and management. They were to return to the owner, as rental, all income of every nature from the building, and were to be paid for their services $125 a month,

". . . plus the sum of ten dollars for each and every apartment upon which a full month's rental has been remitted to the first party, during the previous

month, in excess of the full monthly rental of thirty-three apartments, as aforesaid."

The apartment house contains forty-eight apartments, and the Gardners, as additional compensation, were to have the free use of two apartments, one in the basement and one on the ground floor.

The Spokane Savings Bank, which held a mortgage on the property, was taken over for liquidation by the state banking department, and, in May, 1934, the supervisor of banking took title to the apartment house in satisfaction of the mortgage debt. About this time, J. W. Gardner addressed a letter to the liquidator of the bank, saying:

"I am in possession and management of Clinton Court Apartments in Walla Walla by virtue of a lease from Clinton Court, Inc.

"I am informed by Mr. Raymond J. Huff of the above firm that title to this property has been transferred to you as of May 1, 1934, which conveyance of course abrogates our lease.

"I would like the opportunity, at your convenience, of taking up the matter of a possible satisfactory arrangement, whereby I may be retained in management here.

"Trusting I may have your early reply, I am
          "Yours truly,
                    "J. W. GARDNER."

No change of management was made by the banking department, and the Gardners continued to manage the property, admittedly under terms of the lease, until March 1, 1935. They continued in the management from that date until April 8, 1937, but whether or not the written lease was operative during this latter period is one of the principal issues in the case.

January 18, 1935, the banking department, through

George H. Jackson, then in charge of the liquidation, addressed the following letter to J. W. Gardner:

"PLEASE TAKE NOTICE

"Dear Mr. Gardner:

"After due consideration, we feel called upon to advise that on and after March 1, 1935, that your compensation or salary as manager of the above named apartment house shall be $125.00 per month, together with that certain five room apartment now occupied by you and including light, heat and telephone used in connection with your tenancy of the said apartment.

"Please be advised that any arrangement or agreement existing previous to this date in regard to salary, compensation or commission will be considered 'null and void' and of no effect.

"This notice is in no way intended to construe any change in the duties to be performed by you at the said apartments but that you will continue to diligently perform your duties which have been common to your position in the past and that on and after March 1, 1935 the compensation for the faithful performance of these duties shall be as outlined in the aforesaid paragraph.

"Yours very truly,

"GEO. H. JACKSON
"Special Deputy Prosecutor
in Charge of Liquidation."

To this letter, Mr. Gardner replied February 16, 1935, in part, as follows:

"Dear Mr. Jackson:

"I have your letter, handed me by Mr. Yost several days ago, relating to compensation as manager of Clinton Court Apartments. I note that you advise that the portion of previous agreement which provided for the payment of $10 commission on each occupied apartment above 33 shall be voided.

"In this matter I am sure you will grant a reconsideration. I hope that I may be permitted to retain the management here, and I am anxious only that the com-

pensation be established on a fair and equitable basis.

". . . "As I have indicated, I would like to stay on the job, and I am sure you will be willing to a reasonable adjustment.

"Yours truly,
"J. W. GARDNER."

February 20th, the liquidator wrote to Mr. Gardner as follows:

"Dear Mr. Gardner:
"I have before me your letter of February 16th in response to our letter and notice to you of January 18th, 1935.

"We appreciate the services you have rendered this liquidation in looking after the management of the Clinton Court, but I have felt for some time that the compensation you were receiving was entirely out of line with like services rendered in other apartments we have throughout the states of Washington and Oregon. Therefore, we can not see our way clear to alter the arrangement which we proposed to you on January 18th, 1935. Such arrangement is to become effective as of March 1st, 1935.

"We will be glad to have you continue if you see fit under that arrangement. If not, I will ask that you promptly notify Mr. Yost, our Walla Walla representative, so that arrangements may be made to have someone take your place.

"Yours very truly,
"GEO. H. JACKSON
"Special Deputy Supervisor."

There were no further written communications between the parties, and the Gardners continued to make remittances to the liquidator. They were paid $125 a month by the liquidator, but did not receive the extra allowance for rented apartments in excess of thirty-three, as provided in the lease.

In the early part of the year 1937, the banking department, after auditing the accounts of the defend-

ants, terminated the relationship between the parties as of April 8, 1937, and instituted this action for rentals claimed to have been collected by the defendants and not remitted to the plaintiff. The complaint alleged that between March 1, 1935, and April 8, 1937, the defendants were employed by the plaintiff or his predecessor in office as managers and caretakers of the apartment house at an agreed compensation per month of $125, together with the right to occupy a designated five-room apartment on the ground floor of the building; that the defendants collected rentals from numerous tenants, $1,315.23 of which they had failed to remit to the plaintiff; that the plaintiff retained, as an offset against this sum, $158.33, due the defendants for services rendered in the month of March and the first eight days of April; and that the defendants owed the plaintiff a balance of $1,156.90.

Answering, the defendants denied the retention of any rentals to which they were not entitled, and pleaded the written lease from Clinton Court, Inc., claimed by them to be effective during the whole term of their management of the apartment house, and counterclaimed for a balance of $2,441.90, alleged to be due them.

The defendants filed a demand for a jury trial. A jury was empaneled, but the trial court, conceiving the cause to be one of equitable cognizance, as requiring "an accounting involving hundreds of figures which no jury would have the capacity or facility to handle," chose to treat the jury as advisory only and, at the close of all the evidence, submitted to it the single interrogatory:

"Did the defendants orally accept the offer contained in the letters, dated January 18, 1935, and February 20, 1935, addressed to them by Geo. H. Jackson relative to their compensation?"

To this interrogatory, the jury answered, "No."

Having discharged the jury from further consideration of the case, the court made findings of fact favorable to the plaintiff. It found that the defendants had, by continuing in the management of the apartment house after the notification contained in the liquidator's letters of January 18 and February 20, 1935, acquiesced in the terms proposed by the plaintiff; and that there was due from the defendants to the plaintiff, on account of rentals collected and not accounted for, a balance of $1,038.40. The appeal is from the judgment entered upon the findings.

The appellants contend that the cause was one at law, and their first assignment is based upon the court's refusal to submit all the issues of fact to a jury. The recital, found in the judgment as well as in the findings, that the suit sounded in equity, in that "it required an accounting involving hundreds of figures which no jury would have the capacity or facility to handle," is amply borne out by the record. The complaint had attached, as an exhibit, a schedule covering three typewritten pages, enumerating items of rentals alleged to have been collected by appellants from tenants in the apartment house during a period of over two years, and only partially accounted for by remittances to respondent. The answer and cross-complaint had attached, as an exhibit, a list of items, aggregating $2,910, claimed by the appellants to be due them, under the terms of the lease, for monthly remittances made on apartments in excess of thirty-three. The appellants also claimed credit for cash outlays made by them for labor and material alleged to be chargeable to the respondent under the terms of the lease.

The case made by the pleadings necessarily involved an accounting covering a period of over two years and the reconcilement of conflicting claims. As

the trial developed, this condition was emphasized by exhibits introduced in evidence; as, for instance, exhibit "6," a long list of exceptions taken by the appellants to an audit of the apartment house accounts, which the respondent had caused to be made. The exceptions made by the appellants to the report sought to reconcile discrepancies between the receipts and the amounts remitted to the respondent. Receipt books containing copies of receipts to tenants, as well as detailed statements covering the operation of the apartment house for the period, are also included.

In *Lindley v. McGlauflin,* 57 Wash. 581, 107 Pac. 355, the complaint alleged that the plaintiff had employed the defendant to manage a manufacturing plant for a consideration of $100 a month; that after defendant had been in sole charge of the business for about a year, plaintiff found that the defendant had mismanaged the business and had appropriated $1,-291.30 moneys derived therefrom and belonging to the plaintiff, to his own use. Two other causes of action were stated in the complaint, which of themselves involved no accounting. The defendant answered the complaint, admitting the employment and alleging that his salary was to be $150, instead of $100, a month, and that, in addition thereto, he was to receive 20 per cent of all profits made in the business; that the business made a certain profit during the period of his management, and that he had taken from the business less than he was entitled to in salary and profits, and that there was owing him a balance of $1,618.80. The pleadings in the case were, in the principles and issues involved, much like those in the present case. Sustaining the lower court's denial of a jury trial, this court said:

"This being the status of the issues, it has seemed to us that there could be but little question as to the

correctness of the court's ruling. Manifestly the right of the parties could not be determined except by taking an accounting between them, and as the transactions appeared by the pleadings to be extensive and varied, it necessarily involved a long and complicated accounting. It has long been the rule that these conditions alone justified the assumption of jurisdiction by a court of equity. Indeed, in this state it is especially provided by statute (Rem. & Bal. Code, § 370) that a compulsory order of reference may be made when the trial of an issue of fact shall require the examination of a long account on either side; this, on the principle, of course, that the proceeding was formerly cognizable in chancery and not subject to trial as an action at law; and, of course, if the court may make a compulsory order of reference in such a case, it may make the accounting itself without the aid of a jury. Jurisdiction of equity in this class of cases had its rise in the inadequacy of the common law remedy. A court of law sitting with a jury is not a tribunal constituted so as to try an action involving a long account and reach an accurate result. The jury have no adequate facilities for keeping records of the several items going to make up the account, and the ordinary mind cannot keep them in memory. The result must necessarily be a verdict without adequate consideration of the matters involved, resulting oftener than otherwise in rank injustice to one party or the other."

We are satisfied that the court did not abuse its discretion in treating the case as one of equitable cognizance, triable without a jury.

■■ On the merits, the controlling question was whether the original contract of April 30, 1932, was abrogated by the letters of the liquidator of January 18 and February 20, 1935, addressed to the appellants. The court, as we have seen, reached the conclusion that the appellants acceded to the conditions set forth in those letters. We think the court was right in this conclusion. The letters of the liquidator

stated very definitely that, if appellants wish to continue in the employment of the banking department as managers of the apartment house, they would have to do so on the conditions outlined by him. The respondent contended that there had been an oral acceptance by the defendants of the terms imposed in his letters. While not deeming this issue of controlling importance, the court submitted it to the jury for an advisory verdict. The jury found that there had been no oral acceptance.

The appellants contend that the court was bound by the advisory verdict of the jury. As advisory merely, the court was free to accept or reject it. The decree recites that the court gave due consideration to it. The verdict itself was inconclusive of the main issue. In response to the interrogatory submitted to it, the jury answered that the appellants did not *orally* accept the offer in the letters of January 18 and February 20, 1935, addressed to them by the liquidator. The appellants could, and did, tacitly accept the offer by their conduct in carrying on the management after March 1, 1935, under the conditions imposed by the respondent. Speaking of this phase of the case, the trial court, in its memorandum opinion, said:

"The court will concede that this [the question of an oral acceptance of the lease] was not a very important issue in the case. The defendants could and did bind themselves to the terms of the letter by continuing in the management of the property. Plaintiff, however, particularly in their bill of particulars, contended that in addition to their assent by conduct, they assented orally. As this was a disputed question, it was submitted to the jury. The jury answered that they did not orally assent.

"They could well answer the question thus and still believe that the defendants were bound by their conduct, in regard to which there was no dispute or conflict.

"Their assent to the terms of the letter followed as a matter of law from their conduct, concerning which there was no conflict of evidence."

The amount for which judgment was awarded to the respondent was found by the court after a painstaking analysis of the conflicting claims of the parties. The record supports the court's conclusion, and the judgment should be affirmed.

STEINERT, C. J., BEALS, SIMPSON, and MILLARD, JJ., concur.

